IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


RONALD LANE, INC.,  a West
Virginia Corporation, and
RONALD O. LANE, individually,

          Plaintiffs,

v.                              //   CIVIL ACTION NO. 1:10CV137
                                       (Judge Keeley)

ANTERO RESOURCES APPALACHIAN CORPORATION,
a Delaware Corporation, ALLIANCE WOOD
GROUP ENGINEERING, L.P., a Texas limited
partnership, REBECCA L. SMITH CONSULTING,
LLC, a West Virginia limited liability
company, SELECT ENERGY SERVICES, LLC,
d/b/a Arvilla Oilfield Services, a
Delaware limited liability company, and
STEVE BURLESON, individually,

          Defendants.

ANTERO RESOURCES APPALACHIAN CORPORATION,
a Delaware Corporation,

          Cross-Claimant,

v.

ALLIANCE WOOD GROUP ENGINEERING, L.P.,
a Texas limited partnership, STEVE
BURLESON, individually, REBECCA L. SMITH CONSULTING,
LLC, a West Virginia limited liability
company, SELECT ENERGY SERVICES, LLC,
d/b/a Arvilla Oilfield Services, a
Delaware limited liability company

          Cross-Defendants.

**ANTERO RESOURCES APPALACHIAN CORPORATION,**
a Delaware Corporation,

          **Counter Claimant,**

**v.**

**RONALD LANE, INC., a West Virginia**
**Corporation,**

          **Counter Defendant.**

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
## DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

### I.   INTRODUCTION

Pending before the Court is the motion of the plaintiffs, Ronald Lane, Inc. ("RLI") and Ronald O. Lane, the president of RLI ("Lane") (collectively, "the plaintiffs"), to remand this case to the Circuit Court of Harrison County, West Virginia. For the reasons discussed below, the Court **GRANTS** the plaintiffs' motion to remand (dkt. no. 20), and **DENIES AS MOOT** the motion to dismiss of the defendant, Antero Resources Appalachian Corporation ("Antero") (dkt. no. 10).

### II.   FACTUAL BACKGROUND

This case arises out of Antero's termination of RLI as an oil and gas pipeline contractor for a Marcellus shale project in Harrison County, West Virginia. RLI is incorporated in West Virginia, and has its principal place of business in Arnoldsburg, Calhoun County, West Virginia. Lane is the president of RLI and

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

resides in Calhoun County, West Virginia.  Thus, for diversity of citizenship purposes, both plaintiffs are citizens of West Virginia.

On September 2, 2009, RLI and Antero entered a Technical Services Agreement ("TSA"), under which the parties agreed that RLI would provide Antero with oil and gas pipeline contracting services for a term of three years, with an option to renew.  Pursuant to this agreement, on February 18, 2010, Antero hired RLI to construct the "Williams/Moss gathering system" in Harrison County, West Virginia.  That project was divided into northern and southern sections.  RLI asserts that it was more of a challenge to install a pipeline in the southern section because of the difficult terrain in that area, and that it relied on this factor when bidding its work on the Williams/Moss project.  In other words, it anticipated earning an overall profit on the job through its work on the northern section of the project.

Pursuant to the TSA, the deadline for RLI's completion of the project was May 21, 2010.  During the project, the defendant, Alliance Wood Group Engineering, LP ("Alliance"), served as Antero's site inspector.  On April 29, 2010, as RLI was nearing completion of the southern section of the project, Alliance's

3

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

construction manager, Steve Burleson ("Burleson"), ordered RLI to halt further work and the next day Antero's Vice-President, Mark Mauz ("Mauz"), ratified Burleson's decision and formally terminated RLI as the contractor on the project.  RLI asserts that, on April 29, 2010, it was one week ahead of schedule and that, immediately following its termination, Antero hired Arvilla Oilfield Services, LLC ("Arvilla Oilfield"), as a replacement contractor.

According to the plaintiffs, Burleson was the instigator of RLI's termination.  They allege that, on October 24, 2009, Burleson became angry and displeased when Lane auctioned off a bulldozer and refused to sell it to Burleson at a discounted price.  Burleson apparently wanted to acquire the bulldozer at a discount as part of his retirement plans.  Lane, however, refused to sell the bulldozer to Burleson at a discount because RLI's TSA with Antero forbade such an insider arrangement.

The plaintiffs allege that, following Lane's refusal to grant Burleson a favorable insider deal, in concert with his co-defendants, Burleson conducted a campaign to disparage the reputations of RLI and Lane, and to sabotage their business relationships with Antero.  Burleson's disparagement, and the defendants' concerted actions, ultimately led to RLI's termination,

4

which caused the plaintiffs various economic and psychological injuries.

### III.   PROCEDURAL HISTORY

Based on the events leading to RLI's termination from the Williams/Moss project, the plaintiffs filed a seven-count complaint against the defendants in the Circuit Court of Harrison County, West Virginia, on August 2, 2010.  Pursuant to 28 U.S.C. § 1332, Antero, Alliance, and Burleson (collectively, "the removing defendants"), removed the case to this Court on September 2, 2010. They argued that the Court's subject matter jurisdiction was proper because the parties were completely diverse.  More specifically, they asserted that the plaintiffs had incorrectly listed Burleson as a citizen of West Virginia, when, in fact, he is a citizen of Texas, and that a former defendant, Arvilla Pipeline Construction Co., Inc. ("Arvila Pipeline"), had been fraudulently joined and was a stranger to the case.

On September 29, 2010, the plaintiffs moved to remand this case to state court, arguing that the parties are not completely diverse, that "Arvilla Pipeline" was not fraudulently joined and is incorporated in West Virginia, and that Burleson is a citizen of

West Virginia.[1]  Since that time, the parties have settled Count One of the complaint, see Agreed Partial Dismissal Order (dkt. no. 27), and the plaintiffs have acknowledged that they erroneously named "Arvilla Pipeline" as a defendant and have filed an agreed order dismissing it from the case.  See Agreed Partial Dismissal Order (dkt. no. 41).  They continue to maintain, however, that Burleson is a citizen of West Virginia.

After they filed their motion to remand, and when they filed their voluntary dismissal of Arvilla Pipeline on November 19, 2010, the plaintiffs also moved for leave to file an amended complaint adding Rebecca L. Smith Consulting, LLC ("RLS Consulting"), and Select Energy Services, LLC, d/b/a Arvilla Oilfield Services ("SES"), as successors in interest to Arvilla Oilfield, the proper "Arvilla" entity.  Other than seeking to replace "Arvilla Pipeline" with these defendants, the amended complaint did not materially add to or alter the substantive allegations in the original complaint. The plaintiffs' motion to amend, however, did not address any jurisdictional implications that adding a non-diverse defendant, RLS Consulting, to the case post-removal might raise.

_____

[1]  The parties do not dispute that the amount in controversy meets the jurisdictional threshold as the plaintiffs' breach of contract claim alone seeks $3,117,111.70 in damages.

6

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND**
**DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]**

On November 22, 2010, the Court granted the plaintiffs' motion for leave to file their amended complaint (dkt. no. 38), but did not address whether the addition of RLS Consulting, a West Virginia corporate citizen, would destroy complete diversity. The plaintiffs' claims against RLS Consulting are solely state law claims, including 1) tortious interference with a business relationship, 2) joint venture, 3) conspiracy, 4) intentional infliction or reckless infliction of emotional distress, and 5) business disparagement or injurious falsehood.

In order to resolve the jurisdictional implications raised by the plaintiffs' amended complaint, the Court later ordered supplemental briefing from the parties concerning whether the post-removal addition of RLS Consulting divests it of subject matter jurisdiction.

## IV.   LEGAL STANDARD

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. §§ 1331 (federal question jurisdiction), as well as all actions in which the amount in controversy exceeds $75,000.00 and all plaintiffs are diverse from all defendants, 28 U.S.C. § 1332 (diversity of citizenship

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

jurisdiction).  See Lincoln Property Co. v. Roche, 546 U.S. 81, 89 (2005) (interpreting 28 U.S.C. § 1332 to "require complete diversity between all plaintiffs and all defendants.").

When a federal district court's original jurisdiction is premised on diversity of citizenship, a defendant who is not a citizen of the state in which an action is filed may remove that action to a federal district court if the federal court would have had original jurisdiction over the case when it was first filed. 28 U.S.C. §§ 1441(a) and (b).  When more than one defendant is named in the complaint, "all the defendants must join in removal." Chicago, R. I.&P. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900); see also Barbour v. International Union, 640 F.3d 599, 611-25 (4th Cir. 2011) (recognizing the rule of unanimity); Ryan Environmental, Inc. v. Hess Oil Co., Inc., 718 F. Supp.2d 719, 722 (N.D.W. Va. 2010) (same).  Removal statutes, however, are strictly construed, and the burden of establishing jurisdiction is on the party seeking removal.  Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

Despite these general rules, when a court ascertains the diversity of the parties for jurisdictional purposes, it is not bound to give blind deference to the pleadings, but instead will

8

determine whether diversity jurisdiction is proper by looking to the real parties in interest.  See 17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd., 373 F. Supp.2d 584, 594-95 (E.D. Va. 2005) (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980)).  In conducting such inquiries, several exceptions to the removal statutes have developed, including the fraudulent joinder doctrine, which permits courts to disregard the citizenship of a party named in an action when the party is fraudulently joined. See Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (recognizing fraudulent joinder as an exception to the general rule of complete diversity).

## V.  DISCUSSION

### A.   Burleson is a Citizen of Texas

Here, the plaintiffs argue that Burleson is a non-diverse citizen of West Virginia.  The defendants contend he is a citizen of Texas.

"Citizenship . . . presents a preliminary question of fact to be determined by the trial court."  Sligh v. Doe, 596 F.2d 1169, 1171 (4th Cir. 1979) (citations and footnotes omitted).  "To be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State."  Johnson v. Advance

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND**
**DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]**

America, 549 F.3d 932, 937 n.2 (4th Cir. 2008) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989)); see also Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954) (recognizing that, "[w]ith respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile.").

"Domicile" and "residence," however, are not synonymous terms as "one can reside in one place but be domiciled in another." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) (citations omitted). While a person's "domicile" and "residence" may share the common aspect of physical presence in a place, the place where he intends to remain is his "domicile." Id. A person acquires a domicile at birth and will retain that domicile until he obtains a new one. Id. Once a person establishes his domicile, the law presumes that it continues there until subsequent facts establish otherwise. Mitchell v. United States, 88 U.S. 350, 352-53 (1874) (citations and footnotes omitted). A party alleging a change in domicile bears the burden of proving the change by clear and convincing evidence. See Hakkila v. Consolidated Edison Co. of New York, Inc., 745 F. Supp. 988, 990 (S.D.N.Y. 1990).

When a party's domicile is in dispute, a court may consider the following factors:

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

> "current residence; voting registration and
> voting practices; location of personal and
> real property; location of brokerage and bank
> accounts; memberships in unions, fraternal
> organizations, churches, clubs, and other
> associations; place of employment or business;
> driver's license and automobile registration;
> payment of taxes[.]"

Dyer v. Robinson, 853 F. Supp. 169, 172 (D. Md. 1994) (quoting 13B

Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal

Practice and Procedure § 3612 (2d ed. 1984)).

Here, the plaintiffs argue that Burleson had his domicile in

West Virginia at the time they sued him because he had been living

in Gypsy, West Virginia, for over one year.  Alternatively, they

seek an opportunity to conduct discovery on this matter before the

Court decides the motion to remand.

In their response to these arguments, the defendants

convincingly establish that Burleson, in fact, is domiciled in

Texas, and that he never intended to remain in West Virginia.

Burleson was born in Texas in 1956, graduated from high school

there, and earned a Bachelor of Science degree from East Texas

State University in Commerce, Texas.  He owns a home in Port

Lavaca, Texas, and several other real properties in the same

county, pays real estate taxes on those properties, possesses a

11

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

Texas driver's license, has his vehicles, including a travel trailer, registered in Texas, and is registered to vote in Texas. He has bank accounts at Texas branches of two banks, and asserts that he has always used his Texas address on checks issued from any bank with which he has had an account. Burleson asserts further that, when he lived in West Virginia from April 13, 2009, until September 29, 2010, he lived in a trailer and brought only minimal possessions with him from his home in Texas. Finally, although his wife accompanied him to West Virginia, Burleson claims that she did so for her own work purposes. It is undisputed that, upon the conclusion of his work assignment in West Virginia, Burleson and his wife returned to their home in Port Lavaca, Texas.

Given these circumstances, there can be no doubt that Burleson is domiciled in Texas. Although he may have "resided" in West Virginia while working on the Williams/Moss project, no evidence suggests, let alone clearly and convincingly establishes, that he intended to remain in West Virginia. The Court therefore concludes that Burleson is a citizen of Texas, and that additional discovery regarding this matter is unnecessary. Hakkila, 745 F. Supp. at 990.

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

## B.   The Post-Removal Joinder of RLS Consulting

As noted earlier in this opinion, the Court must determine whether the post-removal addition of RLS Consulting divested the Court of subject matter jurisdiction.  The plaintiffs argue that 28 U.S.C. § 1447(e) requires remand.  The defendants, however, contend that it is  the diversity of the parties at the time of removal that controls whether the Court has subject matter jurisdiction. They further urge the Court to reconsider its decision granting the plaintiffs leave to add RLS Consulting as a defendant, arguing it is neither a necessary nor indispensable party.  The defendants also argue that the plaintiffs fraudulently joined RLS Consulting, and that its citizenship therefore may be disregarded for jurisdictional purposes.  Alternatively, they urge the Court to sever RLS Consulting as a defendant and dismiss it from this action pursuant to Fed. R. Civ. P. 21.

### 1.   28 U.S.C. § 1447(e) Requires Remand

As the plaintiffs correctly observe, the plain text of 28 U.S.C. § 1447(e) and the Fourth Circuit's holding in Mayes v. Rapoport, 198 F.3d at 461-62, compel remand in this case. Section 1447(e) provides:

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.    1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

> If after removal the plaintiff seeks to join
> additional defendants whose joinder would
> destroy subject matter jurisdiction, the court
> may [1] deny joinder, or [2] permit joinder
> and remand the action to the State court.

28 U.S.C. § 1447(e) (alterations added).  In <u>Mayes</u>, the Fourth Circuit recognized that, under § 1447(e), if a district court permits a plaintiff to join a non-diverse defendant, it may not "retain jurisdiction once it permits a non-diverse defendant to be joined in the case." <u>Id.</u> at 462.

Whether to allow a plaintiff to join a non-diverse defendant "is committed to the sound discretion of the district court . . . and is not controlled by a Rule 19 analysis." <u>Id.</u> (citing 14C Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3739, at 445 (3d ed. 1998)).  When exercising such discretion, a district court may consider the following factors:

> "[1] 'the extent to which the purpose of the
> amendment is to defeat federal jurisdiction,
> [2] whether the plaintiff has been dilatory in
> asking for amendment, [3] whether the
> plaintiff will be significantly injured if
> amendment is not allowed, and [4] any other
> factors bearing on the equities.'"

<u>Id.</u> (quoting <u>Gum v. General Electric Co.</u>, 5 F. Supp.2d 412, 414 (S.D.W. Va. 1998) (internal citation omitted) (alterations added)).

14

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

Although the fraudulent joinder doctrine "does not directly apply after removal because the district court already possesses jurisdiction," a district court nevertheless may consider the doctrine as part of its analysis. Id. When making such inquiries, a court must carefully scrutinize whether the plaintiff seeks to join a non-diverse defendant solely to evade federal jurisdiction. Id. (citing AIDS Counseling and Testing Centers, 903 F.2d 1000, 1003 (4th Cir. 1990)). If, as here, a district court did not conduct this analysis at the time it permitted a plaintiff to join a non-diverse defendant, it may retroactively do so under these standards. Id.; see also Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 761-62 (7th Cir. 2009).

Nothing in this case suggests that the plaintiffs named RLS Consulting as a defendant to avoid the federal forum. Their first complaint alleged that "Arvilla Pipeline" stepped in to replace RLI as a contractor at the Williams/Moss project after Antero terminated RLI on April 29, 2010. The complaint further alleged that, in connection with their termination, "Arvilla Pipeline" tortiously interfered with their business relationship with Antero, and that all the defendants acted in concert to harm RLI and Lane.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
## DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

After the defendants removed the case, the plaintiffs received a CD from Antero on October 29, 2010, containing several documents. Among those, the plaintiffs discovered a Technical Services Agreement between Antero and "Arvilla Oilfield" dated April 29, 2010, and payment invoices submitted by Arvilla Oilfield to Antero. These documents clarified that "Arvilla Oilfield," not "Arvilla Pipeline," had performed work at the Williams/Moss project site. Moreover, from the CDs, the plaintiffs also learned that RLS Consulting, a West Virginia company, and SES, are successors in interest to Arvilla Oilfield. It was only after learning this information that, on November 19, 2010, the plaintiffs moved to amend their complaint, to add these defendants.  The plaintiffs' allegations against RLS Consulting and SES are substantially the same as those against "Arillva Oilfield" contained in the first complaint.  The fact that a plaintiff does not attempt to expand the scope or tenor of its claims when seeking to add a non-diverse defendant post-removal may weigh in favor of a finding that it did not join the non-diverse defendant merely to avoid federal jurisdiction. See O'Neal v. Speed Mining, LLC, No. 5:10CV446, 2010 U.S. Dist. LEXIS 105847, at *13-*14 (S.D.W. Va. Oct. 10, 2010) (unpublished).

16

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

Moreover, the plaintiffs were not dilatory in seeking to join RLS Consulting and SES.  They moved to file their amended complaint adding these defendants approximately twenty days after receipt of Antero's CD.  Finally, while the actions of "Arvilla Oilfield," and, by extension, RLS Consulting and SES, are not the primary focus of the plaintiffs' amended complaint, Arvilla Oilfield nevertheless is alleged to be a key player in tortiously disparaging the reputations of RLI and Lane, and also in working to terminate RLI from the Williams/Moss project.

**2.   The Defendants' Opposition to Remand**

In their opposition to the motion to remand, the defendants argue that the Court must assess diversity jurisdiction based on the status of the parties at the time of removal, and deny joinder of RLS Consulting because it is neither a necessary nor indispensable party.  Further, they argue that the plaintiffs fraudulently joined RLS Consulting.  Alternatively, the defendants argue that the Court should dismiss RLS Consulting pursuant to Fed. R. Civ. P. 21.  After careful analysis, the Court concludes that none of these arguments is persuasive.

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

a. **The Post-Removal Assessment of Complete Diversity**

To support their contention that the Court must limit its assessment of diversity jurisdiction to the status of the parties at the time of removal, the defendants rely on Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991), in which the Supreme Court of the United States broadly declared that "diversity of citizenship is assessed at the time the action is filed." Since Freeport was decided, however, courts of appeals, including the Fourth Circuit, have uniformly recognized that the holding in Freeport is limited to whether the substitution of a party pursuant to Fed. R. Civ. P. 25(c) divests a district court of subject matter jurisdiction, and that the broad language of that case is not intended to override the clear congressional intent set forth in 28 U.S.C. § 1447(e).  See Doleac ex rel. Doleac v. Michalson, 264 F.3d 470, 475-77 (5th Cir. 2001) (recognizing that 28 U.S.C. § 1447(e), not the holding of Freeport, governs the remand of an action involving the post-removal joinder of a non-diverse defendant); Cobb v. Delta Exports, Inc., 186 F.3d 675, 679-81 (5th Cir. 1999) (holding that the holding of Freeport is limited to substitutions of parties under Fed. R. Civ. P. 25(c), and that remand of a case involving the post-removal joinder of a non-diverse party is

18

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.   1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

governed by 28 U.S.C. § 1447(e)); <u>Burka v. Aeta Life Ins. Co.</u>, 87 F.3d 478, 483-84 (D.C. Cir. 1996) (recognizing that the holding of <u>Freeport</u> is limited to the substitution of a party under Fed. R. Civ. P. 25(c), not a plaintiff's joinder of a party); <u>Casas Office Machines, Inc. v. Mita Copystar America, Inc.</u>, 42 F.3d 668, 673-75 (1st Cir. 1994) (distinguishing <u>Freeport</u>, and holding that the post-removal joinder of a non-diverse party divests a district court of jurisdiction pursuant to 28 U.S.C. § 1447(e)); <u>Martinez v. Duke Energy Corporation</u>, 130 F. App'x. 629, 634-35, 2005 WL 1009648, at *3 (4th Cir. 2005) (unpublished) (limiting <u>Freeport</u> to the substitution of a party under Fed. R. Civ. P. 25(c)).

These collected cases stand for the proposition that the post-removal joinder of a non-diverse defendant does destroy complete diversity, 28 U.S.C. § 1447(e), and thus strips the Court of subject matter jurisdiction in this case. <u>See</u> <u>Washington Suburban Sanitary Com'n v. CRS/Sirrine, Inc.</u>, 917 F.2d 834, 835-36 (4th Cir. 1990) (citing 28 U.S.C. § 1447(e), and rejecting a defendant's appeal of a district court's remand following the plaintiff's post-removal joinder of a non-diverse defendant).

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.    1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

> **b.    Analysis Under Fed. R. Civ. P. 19 Does Not Apply to a Joinder Implicating 28 U.S.C. § 1447(e)**

The Fourth Circuit has held that a district court's determination whether to permit the post-removal joinder of a non-diverse defendant involves a flexible factors-based approach and is not controlled by an analysis under Fed. R. Civ. P. 19. <u>Mayes</u>, 198 F.3d at 462 (citing 14C Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3739, at 445 (3d ed. 1998)). Thus, the Court need not determine whether RLS Consulting is an indispensable or necessary party under Fed. R. Civ. P. 19.

> **c.    The Defendants Fail to Establish that the Plaintiffs Fraudulently Joined RLS Consulting**

The defendants argue that the plaintiffs fraudulently joined RLS Consulting in order to defeat diversity. In support of their argument, they contend the Court should analyze whether the plaintiffs' claims against RLS Consulting satisfy the pleading standards of <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009); and <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007). As support, they cite <u>Crawford v. Charles Schwab & Co., Inc.</u>, No. 3:09CV666, 2009 WL 3573658 (N.D. Tex. Oct. 30, 2009) (unpublished), which held that a district court must conduct an analysis under Fed. R. Civ. P.

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

12(b)(6) in order to determine whether a plaintiff fraudulently joined a defendant.  They also rely on Roland-Warren v. Sunrise Senior Living, Inc., No. 09CV1199, 2009 WL 2406356 (S.D. Cal. Aug. 4, 2009) (unpublished), which recognized that the fraudulent joinder standard in the Ninth Circuit "parallels that used in deciding motions to dismiss under [Fed. R. Civ. P.] 12(b)(6)."

The approach advanced in these two cases, however, conflicts with that adopted by the Fourth Circuit.  In Mayes, our Circuit Court expressly recognized that courts must review "claims of fraudulent joinder under a standard more lenient than that for a motion to dismiss."  198 F.3d at 466 n.15.  Under that more lenient standard, a defendant may establish fraudulent joinder by showing:

> "[t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

Mayes, 198 F.3d at 464 (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  Courts have sometimes described this standard as requiring a plaintiff to show only that he has a "glimmer of hope" for obtaining relief against a defendant in order to defeat a fraudulent joinder challenge.  Mayes, 198 F.3d at 464

21

(citing <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999)).

Here, because there are no allegations of outright fraud in the pleadings, the only question is whether the plaintiffs have any possibility of establishing a cause of action against RLS Consulting.  While the plaintiffs' amended complaint admittedly contains few details concerning Arvilla Oilfield's involvement in the case, the plaintiffs have sufficiently pled that RLS Consulting, acting in concert with its co-defendants, tortiously interfered with the plaintiffs' business relationship with Antero. <u>See</u> <u>Hatfield v. Health Management Associates of West Virginia</u>, 672 S.E.2d 395, 403 (W. Va. 2008) (quoting Syl. Pt. 2, <u>Torbett v. Wheeling Dollar Sav. & Trust Co.</u>, 314 S.E.2d 166 (1983)) (recognizing that to establish a <u>prima</u> <u>facie</u> case of tortious interference with a business relationship a plaintiff must show "'(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages.'" (emphasis removed from original)).  The plaintiffs also have alleged that RLS Consulting was previously named "Arvilla

Oilfield," and that it changed its name on July 1, 2010, becoming RLC Consulting.

In their attempt to establish fraudulent joinder, the defendants do no more than argue that the plaintiffs' allegations fail to satisfy the pleading standards of <u>Iqbal</u> and <u>Twombly</u>. Ultimately, however, it is of no moment whether these allegations satisfy the pleading standards of Fed. R. Civ. P. 8(a). As already discussed, to establish that the plaintiffs fraudulently joined RLS Consulting, the defendants must show that the plaintiffs have no possibility of obtaining relief under West Virginia law. Here, having pled a claim of tortious interference with a business relationship under West Virginia law, the plaintiffs have clearly demonstrated at least a "possibility of establishing a cause of action" against RLS Consulting. The defendants therefore have failed to establish that RLS Consulting was fraudulently joined post-removal by the plaintiffs. <u>See</u> <u>Mayes</u>, 198 F.3d at 464.

> **d. The Severance and Dismissal of RLS Consulting Pursuant to Fed. R. Civ. P. 21 is Unwarranted**

Finally, the defendants urge that, even if the plaintiffs can properly join RLS Consulting and assert claims against it, pursuant

RONALD LANE, INC., ET AL. V. ANTERO RESOURCES, ET AL.  1:10CV137

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND [DKT. NO. 20], AND
DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [DKT. NO. 10]

to Fed. R. Civ. P. 21, the Court should sever RLS Consulting and dismiss it from the case.  Rule 21 provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21.

Whether to join or dismiss a non-diverse, dispensable party under Fed. R. Civ. P. 21 when misjoinder is alleged is subject to a district court's discretion.  See Fair Housing Development Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972); accord Martinez, 130 F. App'x. at 637.  When determining whether to dismiss a non-diverse party, a court may "consider whether the dismissal of a non-diverse party will prejudice any of the parties in the litigation."  Newman-Green, 490 U.S. at 837-38.

RLS Consulting is not subject to dismissal pursuant to Fed. R. Civ. P. 21.  While arguably it is neither a "necessary" nor "indispensable" party under Fed. R.  Civ. P. 19, to sever it as a party and dismiss it from the case would require the plaintiffs to refile their claims against it in state court and litigate those claims separately from this case.  Remand, by contrast, will permit the entire case to proceed in a single forum.

24

This fact, alone, distinguishes the instant case from Martinez, where the Fourth Circuit held that a district court erred when it declined to dismiss a dispensable and non-diverse defendant under Fed. R. Civ. P. 21.  130 F. App'x. at 637-41.  There, the plaintiffs had filed their complaint in federal court, and the district court's refusal to dismiss a non-diverse party added by the plaintiffs after the commencement of the case required dismissal of the case for want of subject matter jurisdiction.  Id. Here, in contrast, post-removal joinder of a non-diverse defendant results in remand, not dismissal.  Id.

Where the plaintiffs have sufficiently alleged that RLS Consulting was a key player in disparaging the plaintiffs' business reputations and relationships, to require them to litigate their claims against RLS Consulting in a separate forum would be duplicative and wasteful.  The Court therefore declines to sever and dismiss RLS Consulting pursuant to Fed. R. Civ. P. 21.

At bottom, the defendants have failed to establish that the plaintiffs improperly joined RLS Consulting, or that remand is otherwise improper.  Although Burleson is a citizen of Texas, because the plaintiffs are citizens of West Virginia, their post-removal joinder of RLS Consulting, a West Virginia company,

destroys complete diversity and requires remand to the Circuit Court of Harrison County, West Virginia.  See 28 U.S.C. § 1447(e).

## VI.   CONCLUSION

The Court **GRANTS** the plaintiffs' motion to remand (dkt. no. 20), and **DENIES AS MOOT** Antero's motion to dismiss (dkt. no. 10).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to all counsel of record and to mail a copy to the Circuit Court of Harrison County, West Virginia.

DATED: July 25, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE